IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRENDA GONZALEZ SANTINI, ET AL.,

   Plaintiffs,

     v.

RICARDO LUCKE, TROPICAL MARINE INC.,

   Defendants.

CIVIL NO. 13-1375 (FAB/CVR)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

Plaintiff Brenda González Santini (hereafter "plaintiff González") filed the present suit as a federal maritime action against co-defendants Ricardo Lucke (hereafter "Lucke") and Tropical Marine, Inc. (hereafter "Tropical"). The rights claimed under maritime law, declaratory judgment and for preliminary injunction originate from plaintiff González having back on May 15, 2012 entered into an Option to Purchase Agreement with co-defendant Lucke, wherein one Abdiel Rosado representing Palomino Water Sport (hereafter "PWS") granted both González and Lucke an option and right to purchase the M/Y TAKEN in consideration of payment of $10,000.00 to Oriental Bank (hereafter "Oriental") made by González through a check. Said check was never deposited by Oriental. The Option to Purchase Agreement allowed exercise of an option to purchase by paying Oriental financial institution $45,000.00 for the outstanding Note as to the yacht and $6,000.00 to a boatyard in Tortola, British Virgin Islands to convey title of the M/Y TAKEN to the buyer. (Docket No. 4).

Brenda Gonzalez Santini v. Ricardo Lucke, et al.
Civil No. 13-1375 (FAB/CVR)
Report and Recommendation
Page No. 2

---

The Amended Verified Complaint submits Lucke and González agreed that it was González who would pay for and purchase the yacht. González paid the boatyard $6,779.04 for the release of the yacht and also paid Oriental $45,000.00, by check. González paid Adworks Corp. $35,000.00 and $10,000.00 for its advance of the monies to exercise the option to purchase the M/Y TAKEN.

A bill of sale was executed, notarized and delivered to González who states she became the sole legal owner of the yacht M/Y TAKEN. Oriental then gave notice to the Puerto Rico Office of the Commissioner of Navigation that the Note had been cancelled and the mortgage lien extinguished. (*Id.*, Exhibits 1-8). González submits she took possession of the yacht, used and maintained it and paid for all her insurance, maintenance, repair, marina, fuel and other expenses. Between June 2012 and February 2013, numerous efforts were made to obtain from Oriental or PWS a Certificate of Title or Certificate of Documentation to no avail. (*Id.*, ¶24).

By October of 2012, co-defendant Lucke listed the M/Y TAKEN for sale without González' permission having fraudulently represented on or around June 8, 2012 to the Office of the Commissioner of Navigation being the owner of the M/Y TAKEN and registering same under his name. (*Id.*, Exhibit 10). Around February 19, 2013, co-defendant Lucke, ignoring González's prior orders, removed the yacht from its berth in Fajardo, Puerto Rico and sailed it to St. Thomas, U.S. Virgin Island, wrongfully depriving plaintiff González of the yacht. (*Id.*, ¶¶ 27-28). On April 6, 2013, Lucke fraudulently sold the M/Y TAKEN to co-defendant Tropical for $35,000.00, representing being its owner.

(*Id.*, Exhibit 11). Lucke retained the entire proceeds of the sale while representing to plaintiff González, between April and May 2013, that he would reimburse her and Tropical the funds so Tropical could return the yacht to González. Defendants have refused to return possession of the yacht to González despite her demands. (*Id.*).

Plaintiff González filed this federal action including a claim for the conversion of the M/Y TAKEN, all is gear, fittings and hardware against defendants Lucke and Tropical based on maritime jurisdiction. (*Id.*, ¶ IV). González is also seeking declaratory judgment ruling the purchase/sale of the M/Y TAKEN executed by defendants be null and void and that González is the sole and rightful owner. (*Id.*, ¶ V). Additionally, González filed for preliminary injunction to avoid Tropical, which is in the business of buying, repairing and selling yachts, to sell the M/Y TAKEN to any third party, causing irreparable damage by taking it out of the jurisdiction and forever depriving plaintiff of her right to title, possession and enjoyment of the yacht. (*Id.*, ¶ 47). In González' prayer, she requests the Court to enter a decree for the M/Y TAKEN be delivered to plaintiff, declaratory judgment holding plaintiff as its sole and rightful owner, and declaring the bill of sale/purchase entered into by defendants as null and void, plus damages in the amount of $50,000.00. (*Id.*).

The Court referred the issue of preliminary injunction to this Magistrate Judge, as well as the subsequent Motion to Dismiss filed by co-defendant Tropical. (Docket Nos. 14 and 16). Tropical seeks dismissal arguing the Verified Amended Complaint lacks subject matter jurisdiction for there is no admiralty claim, there is no diversity jurisdiction that

could attach to the supplemental claims and there is no personal jurisdiction as to Tropical. (Docket No. 27).[1]

Plaintiff González filed her Opposition to Tropical's Motion to Dismiss averring that she served summons to Tropical in St. Thomas, VI. Plaintiff agrees maritime jurisdiction does not lie out of contracts for the sale of a vessel for these are not considered maritime contracts and also that there is no diversity jurisdiction present in this case. As to maritime jurisdiction, plaintiff González submits the sale of the yacht to Tropical is a link in the chain of events that composed the maritime conversion cause of action and Tropical has refused to return the yacht. Additionally, González avers the court should have supplemental jurisdiction over all other claims and parties, Tropical is an indispensable or necessary party and the Court has personal jurisdiction over Tropical. (Docket No. 29).

**LEGAL DISCUSSION**

Defendant Tropical requests dismissal mainly on arguments of lack of subject matter jurisdiction upon lack of a proper maritime claim. Indeed, federal courts are not automatically authorized to adjudicate every kind of related claim the parties wish to decide. Recupero v. New England Tel. and Tel. Co., 118 F.3d 820 (1st Cir. 1997).[2] Federal courts are not courts of general jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). For said reasons, first and foremost, upon absence of

---

[1] Tropical filed, without leave of court, a reply in support of its Motion to Dismiss. Upon failure to request prior leave, same is stricken. Local Rule 7(c). (Docket No. 30).

[2] Constitutionally and statutorily limited jurisdiction of federal courts cannot be expanded by stipulation or joint request of the parties.

diversity for the Court to entertain jurisdiction in this action it must be maritime. Jurisdictional statutory requirement for judicial review implicates a court's constitutional and/or statutory power to hear and resolve a case and upon non-compliance the court is deprived of subject matter jurisdiction to adjudicate a matter. Bowles v. Russell, 551 U.S. 205, 213, 127 S.Ct. 2360 (2007); Alphas Co., Inc. v. William H. Kopke, Jr., Inc., 708 F.3d 33 (1st Cir. 2013).

It is proper to argue that at first glance plaintiff González seems to claim maritime conversion of the vessel M/Y TAKEN by co-defendant Lucke and his subsequent sale to co-defendant Tropical. As such, seemly the claim falls under the shield that "[i]t is a fundamental principle that admiralty has jurisdiction in a possessory suit by the legal owner of a vessel who has been wrongfully deprived of possession.³ See Ward v. Peck, 59 U.S. (18 How.) 267 [15 L.Ed. 383] (1856); Rea v. The Steamer ECLIPSE, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890); 1 Benedict on Admiralty § 73, at 154-56 (6th ed. 1940). See also Gallagher v. Unenrolled Motor Vessel River Queen (Hull No. A-681 84), 475 F.2d 117 (5th Cir. 1973).

Notwithstanding, a suit which is styled as a possessory or petitory action, but is in fact an action to enforce a contract to place title in the plaintiff's name has not been considered as lying in maritime jurisdiction. In William P. Brooks Const. Co., Inc. v. Guthrie, 614 F.2d 509 (C.A.Tex., 1980), the Court determined the lawsuit as a true

---

³ A possessory action is one where a party entitled to possession of a vessel seeks to recover that vessel. It is brought to reinstate an owner of a vessel who alleges wrongful deprivation of property. This statement indicates that the action is one to recover possession rather than to obtain original possession. See 15 TLNMLJ 47, Tulane Maritime Law Journal "WE JUST WANT OUR SHIP BACK"--ACTION FOR POSSESSION IN ADMIRALTY (Fall, 1990).

possessory action for plaintiff therein was the undisputed titleholder of record and not merely as stated an action to obtain original possession. The essential wording as to the suit being one won by "the legal owner of a vessel who (had) been wrongfully deprived of possession" makes up for the difference when dealing with maritime conversion. *See* Gallagher v. Unenrolled Motor Vessel River Queen, 475 F.2d 117, 1973 AMC 887 (5th Cir. 1973).

In the present case, however, plaintiff González has never been the M/Y TAKEN's registered holder of title under law. The Verified Amended Complaint sustains that although without González' permission and fraudulently, on or around June 8, 2012 co-defendant Lucke managed to have the M/Y TAKEN registered under his name by representing to the Office of the Commissioner of Navigation that he was the owner. (Docket No. 4, Exhibit 10). Having already the vessel's title registration under his name, Lucke then proceeded to fraudulently sell the M/Y TAKEN on April 6, 2013 for $35,000.00 to third-party, herein co-defendant Tropical, representing being its legal owner. (*Id.*, Exhibit 11).

It has long been the law, as stated by Judge L. Hand, "'that a court of admiralty will not entertain a suit for an accounting as such as, for example, an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and an agent, and so on. ... A court of admiralty takes cognizance of certain questions between part owners, as to the possession and employment of the ship, but will not assume jurisdiction in matters of accounting between them.'" *See* Economu v. Bates, 222 F.Supp. 988, 991

(D.C.N.Y.1963) (citing to W.E. Hedger Transp. Corp v. Ira S. Bushey & Sons, 155 F.2d 321, 323 (2d Cir. 1946)).

As such, the disputes between plaintiff González and co-defendant Lucke do not rest on maritime issues in regard to the M/Y TAKEN.

In addition, plaintiff's Amended Verified Complaint also states that it had been agreed between Lucke and plaintiff González, for reasons and considerations presently undisclosed, back on May 15, 2012 to enter into an Option to Purchase Agreement with plaintiff González and co-defendant Lucke, wherein one Abdiel Rosado representing PWS granted González and Lucke an option and right to purchase the M/Y TAKEN in consideration of payment of $10,000.00 to Oriental made by González through a check. The Option to Purchase Agreement allowed exercise of an option to purchase by paying Oriental $45,000.00 for the outstanding Note as to the yacht and payment of $6,000 to a boatyard in Tortola, British Virgin Islands so as to convey title of the M/Y TAKEN to the buyer. These events are similar to other federal cases wherein no maritime claim was found to exist. *See* The Managua, 42 F.Supp. 381 (S.D.N.Y.1941) (partnership dispute over ownership of vessel by virtue of plaintiff's status as a partner was not a maritime claim); Fathom Expeditions, Inc. v. M/T Gavrion, 402 F.Supp. 390 (D.C.Fla. 1975)(finding dispute concerning division of profits in joint ventur not a maritime claim and beyond admiralty jurisdiction); Percy v. Suchar, 2001 WL 228434 (D.Me.2001) *(citing* The Managua with

approval and holding that Rule D did not apply to dispute because defendant had sole legal title); Coutsodontis v. M/V ATHENA, Not Reported in F.Supp.2d, 2008 WL 4330236 (E.D.La., 2008).

Similar to the present case in Managua the action was commenced by filing of a libel claim to set aside a sale of steamships which belonged to a partnership at time of sale, and it was alleged that steamships were illegally sold to respondent by surviving partner of partnership. The main purpose of action was to settle a partnership dispute and, although relief demanded contemplated delivery of possession of steamships to partnership, if that could not be accomplished, a partition and sale of steamships was requested. Said action was construed as one that involved a "partnership dispute" cognizable in equity and not in admiralty. For said reason, the libel claim was to be dismissed for the subject matter of action was not one of a "maritime" nature. *See* The Managua, 42 F.Supp. 381.

A petitory suit that presents maritime jurisdiction is one based on an assertion of legal title. The existence of a merely equitable title is considered insufficient to allow consideration of such action as petitory. *See* Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, 625 F.2d 44, 1981 AMC 1005 (5th Cir.1980). *See also* Northern Ins. Co. v. 1996 Searay Model 370 DA Yacht, 453 F. Supp.2d 905 (D.S.C. 2006) (rightful owner awarded title and possession of yacht that was stolen and later sold to a bona fide purchaser). As to the latter cases, the rightful and registered owner was the one seeking possession of the vessel, which is not the situation as to González.

Although state courts can adjudicate title to a vessel or the right of possession it cannot proceed *in rem* determination as against the world that is commenced by arrest of the vessel. *See* 2 ADMMARL § 21-4, *Possessory, petitory, and partition actions: Rule D* (5th ed.). For such reason, there is concurrent jurisdiction between federal and state courts as construed in regard with Title 28, United States Court, Section 1333 which provides federal courts with original jurisdiction over some admiralty matters, while granting state courts concurrent jurisdiction over some of these matters. "Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings in rem ." *See* Madruga v. Superior Ct. of State of Calif., 346 U.S. 556, 560, 74 S.Ct. 298, 300-301 (1954).[4]

Furthermore, plaintiff González has not filed an *in rem* action as to the vessel M/Y TAKEN nor has she availed herself of the Supplemental Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims.[5] Rather, plaintiff González' claim is in equity as to being dispossessed of the vessel title by co-defendant Lucke as to which then a third-party, herein co-defendant Tropical, obtained through purchase from Lucke. No knowledge of the fraud is attributed in the Amended Verified Complaint to Tropical. Admiralty

---

[4] In Madruga the Highest Court noted the state court in this proceeding acts only upon the interests of the parties over whom it has jurisdiction in personam, and it does not affect the interests of others in the world at large, as it would if this were a proceeding in rem to enforce a lien.

[5] Supplemental Rule D provides in pertinent part:

> In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property ... the process shall be by a warrant of arrest of the vessel, cargo, or other property....

Case 3:13-cv-01375-FAB-CVR   Document 32   Filed 06/26/13   Page 10 of 11

Brenda Gonzalez Santini v. Ricardo Lucke, et al.
Civil No. 13-1375 (FAB/CVR)
Report and Recommendation
Page No. 10

provides for an *in rem* action to assert title or a possessory right to a vessel and other maritime property but not in equity.  However, the agreement between the herein main parties González and Lucke, which is now subject of dispute as to the right of ownership as to title over the vessel M/Y TAKEN, to which third-party Tropical is also brought as a link in the chain of events, is rather one resting on equities and not maritime law for which the Court should not be vested with subject matter jurisdiction absent any proceeding *in rem*.

Insofar as the supplemental claims arguments to sustain jurisdiction in this case, lack of subject matter jurisdiction in this federal court also deprives, in the absence of diversity as admitted by the parties, supplemental jurisdiction of the Court as to co-defendant Tropical for there is no other federal question raised in the Amended Verified Complaint.[6] As argued in Tropical's Motion to Dismiss, there must be an independent source of subject matter jurisdiction for the court to grant injunctive or declaratory relief.  Upon lack of subject matter jurisdiction, merely being summoned and served with process as argued by plaintiff González would still grant no substance to personal jurisdiction as to Tropical based on having been served with process in St. Thomas, Virgin Islands regarding plaintiff González' claims for which there is no need to discuss at this stage lack of in personam jurisdiction.

---

[6] The doctrine of pendent jurisdiction, which allowed plaintiffs to assert non-federal claims in federal court, was applicable only in federal-question cases. *See* 7C Wright, Miller, & Kane *Fed. Prac. & Proc.* § 1917 n. 7 (2d ed. 2004); Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 348–49, 108 S.Ct. 614 (1988); *see also* Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 370, 98 S.Ct. 2396.

<u>Brenda Gonzalez Santini v. Ricardo Lucke, et al.</u>
Civil No. 13-1375 (FAB/CVR)
Report and Recommendation
Page No. 11

## CONCLUSION

In consideration of above discussion, this Magistrate Judge recommends co-defendant Tropical Marine Inc.'s Motion to Dismiss be GRANTED.[7] (Docket No. 27).

IT IS SO RECOMMENDED.

**Since the matter of preliminary injunction referred by this Court is already set for July 12, 2013, the concerned parties to this referred motion, that is, plaintiff González and Tropical Marine, Inc., are granted a reduced time to oppose this Report and Recommendation, that is, they are to file their simultaneous opposition, if any, by July 3, 2013.**

San Juan, Puerto Rico, this 26th day of June of 2013.

                         S/CAMILLE L. VELEZ-RIVE
                         CAMILLE L. VELEZ RIVE
                         UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant Lucke is *pro se* and was advised by the undersigned of the fact that he should retain counsel or apply for appointment of counsel under the *pro bono* program. (Docket No. 26). To this day, Lucke has failed to timely appear with counsel or request *pro bono* counsel. As such, Lucke has not filed a responsive pleading. However, since the recommendation made herein relies on jurisdictional grounds, the same may be extended to Lucke within the discretion of the presiding District Judge.